UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| GREGORY PEEPLES, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| vs. | ) | No. 4:13-CV-399 (CEJ) |
| JAMES HURLEY, | ) |  |
| Respondent. | ) |  |

# MEMORANDUM

This matter is before the Court on the petition of Gregory Peeples for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I. Procedural Background

At the time the petition was filed, petitioner was incarcerated at the Northeast Correctional Center pursuant to the sentence and judgment of the Circuit Court of the City of St. Louis, Missouri.[1] On March 25, 2009, a jury found petitioner guilty of leaving the scene of a motor vehicle accident in violation of Mo. Rev. Stat. § 577.060, resisting arrest in violation of Mo. Rev. Stat. § 575.150, endangering the welfare of a child in the second degree in violation of Mo. Rev. Stat. § 568.050, and assault in the second degree in violation of Mo. Rev. Stat. § 565.060. Resp. Ex. B at 2–3, 49–52. The jury was unable to reach a verdict on drug possession and unlawful use of a weapon charges, and the prosecutor dismissed them after trial. The trial court sentenced petitioner as a prior and persistent offender and prior and persistent drug offender to concurrent five-year terms of imprisonment to

---

[1] It appears that petitioner was released from prison after filing his petition. "Parole status does not deprive a federal court of jurisdiction over a habeas petition . . . because a parolee is still 'in custody.'" Jones v. Jerrison, 20 F.3d 849, 852 n.2 (8th Cir. 1994) (citing 28 U.S.C. § 2254(a)).

run consecutively to his sentences in a previous case.[2] Resp. Ex. B at 58–62. Petitioner appealed his conviction, and on February 2, 2010 the Missouri Court of Appeals affirmed. State v. Peeples, 302 S.W.3d 783 (Mo. Ct. App. 2010); Resp.'s Exs. C, F.

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied after receiving and considering deposition testimony as evidence. Resp.'s Ex. G, at 38–129. On November 20, 2012, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Peeples v. State, 386 S.W.3d 211 (Mo. Ct. App. 2012); Resp.'s Ex. K. On March 1, 2013, petitioner timely filed this petition pursuant to 28 U.S.C. § 2254.

## II. **Factual Background**

Police officers James Daly and Doug Reinholz were on patrol in a marked police vehicle in St. Louis City on October 7, 2007 when they observed and conducted a license plate check on a white Dodge Charger. Resp. Ex. A, Tr. 112. The records check indicated that a person associated with the vehicle was wanted for an ordinance violation in St. Louis County. The officers initiated a car stop with their emergency warning lights, and the car pulled over. However, as the officers walked toward the vehicle, the car drove off. The officers returned to their vehicle and followed. At the intersection of Osceola and Compton, the officers observed the white Charger collide with a red van. Tr. 113. The officers also observed the driver of the white Charger, identified as petitioner, climb out of the driver's side

---

[2] The trial court also sentenced petitioner to a one-year term for the offense of endangering the welfare of a child in the second degree, but credited petitioner for time served.

2

window and flee on foot. The officers exited their car and chased petitioner, capturing him approximately 25 feet away.

Officers Daly and Reinholz arrested petitioner for attempting to leave the scene of an accident and conducted a search incident to arrest. Tr. 114. Officer Daly found and seized a loaded .45 caliber pistol, baggies of suspected crack cocaine and marijuana, and $230 in currency. At a pre-trial hearing on defendant's motion to suppress this evidence pursuant to an allegedly unlawful search and seizure, defense counsel argued that the prosecution had failed to establish reasonable suspicion for the initial stop by the officers. Tr. 126–27. The trial court denied the motion. Tr. 132.

At trial, Officer Daly testified that after he arrested petitioner, he returned to the white Charger and found a 12-year old girl, petitioner's daughter, sitting in the front passenger seat with neck and back injuries. Tr. 151. He described the vehicle collision between the Charger and the van as "incredible" and estimated that the Charger was traveling at 80 to 90 miles per hour when it entered the intersection. Tr. 152. He also described the damage to the van as "extensive" and estimated the damage to be over $1,000. Tr. 164–65. Officer Daly's partner, Officer Reinholz, also testified at trial. He described the collision as "probably one of the worse accidents I have seen." Tr. 210. After petitioner's arrest, Officer Reinholz attended to the passengers in the van and did not observe the search of petitioner incident to his arrest. Tr. 228.

Dianna Hernandez testified that she and four of her family members were passengers in the van with which the white Charger collided. Tr. 234. She stated that the accident caused her to bump her head. Her mother, Dianna Thurmond,

3

was driving the van and testified as to the family's resulting injuries from the accident. Tr. 238. She stated that her daughter had been to the hospital six or seven times since the accident, and she also went to a clinic for headaches. Tr. 241. On redirect examination of Ms. Thurmond, the prosecutor moved to admit photographs of the van after the collision, which the court received into evidence over the defense attorney's objection. Tr. 244. Ms. Thurmond also testified that the estimated value of the van prior to the accident was $8,000 and that the van was totaled after the accident. Tr. 245.

A criminalist with the St. Louis Metropolitan Police Department Crime Lab, Allyson Seger, testified that she tested the bagged substances found on petitioner at the scene of the accident and determined that one substance was cocaine base and the other was marijuana. Tr. 194–97. The supervisor of the firearm and tool mark section of the St. Louis City Police Department laboratory, Officer David Menendez, testified that he tested the weapon found on petitioner and concluded that the gun was operational. Tr. 202–04.

Defense counsel moved for a judgment of acquittal at the close of the state's case, which the trial court overruled. Tr. 255. Defense counsel then called Amber Turkington, a witness to the accident, to testify. She stated that she saw the officers' police vehicle traveling at a high rate of speed behind the white Charger prior to the accident and one of the officers arrest petitioner on the ground right beside the car. Tr. 258–62.

Additional facts will be included as necessary to address the merits of petitioner's claims for relief.

### III. <u>Legal Standard</u>

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not

5

apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

"To preserve a claim for relief, a habeas petitioner must have raised both the factual and legal bases of his claim to the state court, and afforded that court a fair opportunity to review its merits." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (internal citations and quotations omitted). When a habeas petitioner has defaulted on his federal claims in state court, "federal habeas review of his claims is barred unless he 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" Morgan v. Javois, 744 F.3d 535, 538 (8th Cir. 2013) (quoting Coleman v. Thompson, 501 U.S. 722, 750–51 (1991)). To establish "cause" for the default, a petitioner generally must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish actual prejudice, the petitioner "must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis omitted).

**IV.  Discussion**

Petitioner presents six claims for relief: (1) trial counsel was ineffective for failing to investigate or call Breanna Peeples as a witness; (2) trial counsel was ineffective for failing to object when the prosecuting attorney exceeded the scope of cross-examination on redirect examination of Dianna Thurmond; (3) post-conviction counsel failed to raise a claim of ineffective assistance based on trial counsel's failure to introduce prior inconsistent statements of Officer Daly; (4) post-conviction counsel failed to raise a claim of ineffective assistance based on trial counsel's failure to timely file a motion for a new trial; (5) post-conviction counsel failed to raise a claim of ineffective assistance based on trial counsel's failure to object to the jury instruction on the charge of resisting arrest; and (6) the trial court erroneously denied petitioner's motion to suppress evidence at trial.

On direct appeal, petitioner claimed that the trial court erred in overruling his motion to suppress evidence, because the prosecution failed to present evidence of the basis for the reasonable suspicion underlying the officers' initial stop of his vehicle at the suppression hearing. Resp.'s Ex. C at 10–12. In his amended post-conviction motion, petitioner claimed that trial counsel was ineffective for failing to investigate or call Breanna as a witness and for failing to object when the prosecution questioned Ms. Thurmond beyond the scope of cross-examination on redirect examination. Resp.'s Ex. G at 17–32. Petitioner filed a motion to supplement his amended post-conviction motion with additional claims, which the post-conviction court determined it could not consider for lack of timeliness. Resp. Ex. G at 17–32, 129. Accordingly, petitioner properly raised and exhausted his claims in Grounds One and Two in the state proceedings below, but defaulted on the claims in Grounds Three through Six.

7

### A. Ground One

Petitioner first contends that trial counsel was ineffective for failing to investigate or call his daughter Breanna Peeples as a witness. Petitioner states that Breanna was willing and available to testify that petitioner did not flee from police or the scene of the accident, because she saw the officers apprehend him immediately after he exited the vehicle. Respondent asserts that the testimony from Breanna was mostly cumulative to the evidence presented at trial and the non-cumulative part of her testimony would have undermined a key part of trial counsel's strategy.

At trial, the arresting officers testified that, following the collision with the van, they observed petitioner climb out the driver's side window of the white Charger and flee south on foot. Resp. Ex. A, Tr. 148, 211. They also testified that they chased petitioner, capturing him approximately 25 feet away from the vehicle near an alley. Subsequently, Officer Daly arrested petitioner for attempting to leave the scene of an accident and conducted a search incident to the arrest, finding a loaded weapon, marijuana and crack cocaine on petitioner. Tr. 149–150. An eyewitness to the accident, Amber Turkington, testified that she saw petitioner attempt to exit the vehicle, but did not see him actually exit. Tr. 258. When she turned her attention away from the passengers of the van and back to petitioner, he was on the ground in handcuffs next to his car. Tr. 259. She stated that she did not see a gun or any drugs at the scene. Tr. 262. In his opening statement, cross-examination of the officers, and closing argument, trial counsel based petitioner's defense on a cover-up theory, arguing that the officers first stopped petitioner's vehicle without reason, then caused the accident by embarking on an

unlawful car chase, and finally fabricated the foot chase to give them probable cause to search petitioner incident to an arrest. Tr. 142–43, 165–88, 214–28, 281–94.

In his post-conviction testimony, trial counsel stated that his theory of defense at trial was that petitioner had not run from the police officers and that the officers had planted the drugs and weapon on him. Resp. Ex. G at 43, 61. Trial counsel stated that he had considered whether to call Breanna as a witness at trial, but thought she might be an unfavorable witness for the defense based on statements in police reports of the accident and her relationship with her father. Id. at 44–45. Trial counsel thought he would be able to rely on cross-examination of the officers to support his theory of the defense due to inconsistencies in their testimony, without the need to call Breanna to testify. Id. at 59–60. Also, he thought having Breanna testify would be more harmful than helpful to petitioner's defense due to her youth, lending credence to the charge against petitioner of endangerment of the welfare of a child and further upsetting the jury. Id. at 53–54, 62.

Breanna testified at the post-conviction hearing that after the car accident, petitioner jumped out of the driver's window to help her out of the vehicle. Resp. Ex. G at 113–14. However, before he reached her side of the car, the officers arrested him on the ground two feet from the car. She described petitioner as driving at a "medium" speed prior to the accident, "just a little over" the speed limit. Id. at 116–17. Breanna also testified that petitioner had not fled from the initial stop, but instead waited until after the officers had finished talking to him to drive away.

Based on the testimony of trial counsel, the post-conviction court determined that the decision to not call Breanna to testify was based on trial strategy, taking into account all of the circumstances in the case. Resp.'s Ex. G at 128. The Missouri Court of Appeals agreed, finding that counsel's decision to not call Breanna as a witness at trial constituted reasonable trial strategy. Resp.'s Ex. F at 5. The appeals court also determined that Breanna's testimony would have been merely cumulative to Ms. Turkington's testimony. Id. at 5–6.

To prevail on an ineffective assistance of counsel claim, petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With the first prong of Strickland, there exists a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. Id. at 689. For the second prong, petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The state court decisions to deny petitioner's claim of ineffective assistance of counsel for the failure to call Breanna as a witness were not contrary to clearly established law. Both post-conviction courts correctly cited the standard for an ineffective assistance claim set forth in Strickland. The state court decisions also did not involve an objectively unreasonable application of Strickland or an unreasonable determination of the facts. In considering whether counsel's performance was deficient under an objective reasonableness standard, the state courts considered all of the circumstances involved in the case, including the testimony of other witnesses and counsel's theory of defense. Id. at 688–91. The

state courts also reasonably considered trial counsel's decision to not call Ms. Peeples as a witness a strategic choice. See id. at 690–91 (stating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

In his post-conviction deposition, trial counsel testified that he had considered the value or detriment Breanna's testimony would add to his theory of defense. Because a portion of Breanna's testimony would have contradicted trial counsel's argument that the officers unreasonably chased petitioner after he drove away from the initial stop, ultimately leading to the unlawful search and seizure of the drugs and weapon, the decision to not call her to testify constituted trial strategy. Also, trial counsel stated he considered the prejudicial effect having petitioner's daughter testify would have on the jury and credence her testimony would have in supporting the endangerment of a child charge, which constitutes further trial strategy. Finally, as the post-conviction courts found, the remaining testimony proffered by Breanna would have merely been cumulative to Ms. Turkington's testimony that petitioner was arrested a few feet from the vehicle and had not fled the scene of the accident.

Additionally, the state court decisions did not involve an unreasonable application of the prejudice prong of Strickland. The effectiveness of trial counsel's decision to advocate a cover-up defense theory is demonstrated by the jury's decision to not convict petitioner on the controlled substance and weapon charges. If trial counsel had called Breanna to testify, her testimony would have undermined counsel's theory of defense since she stated in her deposition that petitioner had not fled from the initial stop and the officers did not engage in a high speed chase.

11

If the jury believed the officers did not cause the accident—which trial counsel asserted provided their motive to fabricate the story of petitioner fleeing from the scene of the accident to give them a basis to arrest him, search him and plant evidence—counsel's theory of defense may have been ineffective and petitioner could have been convicted on additional charges. Thus, petitioner also cannot show that he suffered a prejudice as a result of counsel's performance.

### B. Ground Two

Petitioner next argues that trial counsel was ineffective for failing to object when the state's redirect examination of Dianna Thurmond went beyond the scope of cross-examination. Specifically, petitioner complains that in redirect examination the prosecutor presented Ms. Thurmond with photographs of her damaged van and proceeded to question her about the monetary value of the van before and after the accident when trial counsel only asked Ms. Thurmond about the position of her van during cross-examination. Respondent asserts that the trial court had discretion to permit the prosecution to ask these questions and would have allowed the questions to Ms. Thurmond on redirect even if trial counsel had objected for scope.

At trial, Officer Daly testified that the damage to the van from the impact of the Charger was "extensive" and "absolutely" over a thousand dollars. Resp. Ex. A at 164–65. During direct examination of Ms. Thurmond, the prosecutor inquired as to the sequence of events leading up to the accident and the injuries suffered by her family members from the collision. Id. at 236–42. On cross-examination, petitioner's trial counsel asked Ms. Thurmond about the van's position after the accident. Id. at 242. On redirect examination, the prosecutor asked the trial court if he could "clear one thing up" and approach the witness with photograph exhibits

12

of the van. Id. at 243. Trial counsel stated that he thought the photographs were "outside the scope" of cross-examination. The trial court noted that, while trial counsel was "technically" correct, it did not see any prejudice since the photographs had been disclosed to counsel already. Id. The prosecutor proceeded to show the photographs to Ms. Thurmond and ask her about the value of the van before and after the crash, without further objection from trial counsel. Id. at 244–45. Ms. Thurmond testified that the value of the van was roughly $8,000 before the accident and that the van was totaled in the collision.[3] Id. at 245.

The post-conviction court, which was also the trial court, stated in its decision that even if petitioner's trial counsel had objected to the line of questioning regarding the value of the damage to the van as outside the scope of direct and cross-examination, the court would not have sustained the objection in light of the other evidence. The post-conviction court also stated that it did not believe Ms. Thurmond's testimony had a decisive effect in light of the other evidence presented at trial. Resp. Ex. G at 128–29. The Missouri Court of Appeals noted that Officer Daly had testified independently that the damage to the van was greater than $1,000. Resp. Ex. K at 7. Thus, the appeals court found that even if counsel had objected to Ms. Thurmond's testimony, the evidence had already been presented to the jury and no prejudice resulted.

Both state courts properly considered petitioner's claim regarding trial counsel's failure to object to Ms. Thurmond's testimony under the standard set forth in Strickland. The state court decisions also did not involve an unreasonable

---

[3] As noted by the post-conviction court, the value of the van was relevant to determine whether the crime of leaving the scene of a motor vehicle accident was a felony or misdemeanor under Mo. Rev. Stat. § 577.060. Resp's Ex. G at 128, n.2. Pursuant to Mo. Rev. Stat. § 577.060.3(2), leaving the scene of a motor vehicle accident is a class A misdemeanor, except where the accident resulted in damage in excess of $1,000, which is then classified as a class D felony.

13

application of law or an unreasonable determination of the facts. In Missouri, trial courts have great discretion to determine the scope and extent of redirect examination and will be reversed only upon a showing of both abuse of discretion and prejudice to the defendant. E.g., State v. Davidson, 947 S.W.2d 87, 88 (Mo. Ct. App. 1997). The post-conviction court, which reviewed its own actions as the trial court on collateral appeal, stated that even if trial counsel had objected, it would have exercised its discretion to permit the broadened scope of Ms. Thurmond's testimony on redirect. Thus, petitioner was not prejudiced by counsel's failure to object. Also, the state courts reasonably found that petitioner could not demonstrate a probability that the result of the trial would have been different if his counsel had objected to the redirect examination of Ms. Thurmond. The prosecution had presented independent evidence through the testimony of Officer Daly that the damage to the van classified the charge of leaving the scene of an accident as a felony. The testimony of Ms. Thurmond, thus, was properly categorized by the state courts as cumulative evidence that did not deprive petitioner of his right to a fair trial. See Worthington v. State, 166 S.W.3d 566, 581 (Mo. banc 2005) (stating that the failure to object will only be deemed ineffective assistance of counsel "when the defendant has suffered a substantial deprivation of his right to a fair trial").

### C. Grounds Three, Four, and Six

The claims in Grounds Three, Four and Six are procedurally barred unless petitioner can demonstrate cause and prejudice or a miscarriage of justice. Morgan, 744 F.3d at 538. Without finding that petitioner has made the requisite

14

showing to excuse the default, the Court will address the claims asserted in these grounds.

In Ground Six, petitioner contends the trial court abused its authority by overruling his motion to suppress. Petitioner argues that the trial court's determination was in error, because the evidence was derived from a continuance of action with the police after an initial illegal stop and seizure. This claim is generally not cognizable on habeas review. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (footnotes omitted); see also Willett v. Lockhart, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc) ("We conclude that under Stone a federal habeas court considering a state prisoner's claim alleging a Fourth Amendment violation should abstain from reviewing the state court records to determine if the state's factual findings are fairly supported by the record as a whole . . . . Rather, the proper inquiry is whether 'the State has provided an opportunity for full and fair litigation' of the claim.") (quoting Stone, 428 U.S. at 482).

To establish that he was not afforded an opportunity for full and fair litigation of his claim, petitioner would have to show that the state "provided no corrective procedures at all to address the alleged Fourth Amendment violation" or that the State "provided a corrective mechanism, but [he] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Willett, 37 F.3d at 1271–72 (adopting test set forth in Capellan v. Riley, 975 F.2d

15

67, 71 (2d Cir. 1992)). Petitioner was provided a mechanism by which to file a motion to suppress evidence and a hearing at which to cross-examine the arresting officer and present evidence in support of his motion. "[M]ere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72. Petitioner has asserted no other facts or allegations indicating he did not receive an opportunity for full and fair litigation of his Fourth Amendment claim. See Willett, 37 F.3d at 1270 (stating that "an error of law in the state court's decision does not by itself provide grounds for habeas relief in a Fourth Amendment case"). As such, the Court must abstain from reviewing the claim in Ground Six on habeas review.

In Ground Three petitioner alleges that his post-conviction counsel was inadequate in failing to raise a claim of ineffective assistance of counsel, because his trial counsel failed to introduce as evidence at the suppression hearing prior inconsistent statements of Officer Daly that were contrary to his testimony. Petitioner contends that prior statements in Officer Daly's probable cause statement and police report regarding his exact location when approaching petitioner's car during the initial stop would have supported petitioner's Fourth Amendment illegal seizure claim at the suppression hearing. In Ground Four, petitioner asserts that his post-conviction counsel should have raised an ineffective assistance claim based on trial counsel's failure to timely file a motion for a new trial.

"Inadequate assistance of counsel at initial-review collateral proceedings," or the first level of post-conviction review at which a prisoner has the first opportunity to raise a claim of ineffective assistance at trial, is not an independent claim for relief, but "may establish cause for a prisoner's procedural default of a claim of

ineffective assistance at trial." Martinez v. Ryan, 132 S. Ct. 1309, 1315 (U.S. 2012). To establish cause when the state court appointed counsel to the petitioner in the initial-review collateral proceeding, as here, the petitioner must demonstrate that the post-conviction counsel was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984) and that the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318.

Assuming that counsel's performance as alleged in Grounds Three and Four fell below an objective standard of reasonableness, petitioner cannot demonstrate prejudice. The evidence petitioner alleges the officers unlawfully seized, which he attempted to suppress, included a gun and controlled substances. Resp. Ex. A, Tr. 110, 114; Resp. Ex. B at 22. The jury deadlocked on the charges involving these items, and the prosecutor dismissed the charges after the trial. Resp. Ex. A, Tr. 305–07; Resp.'s Ex. B at 15, 20. Further, the jury was instructed to consider each charge against petitioner separately, and it is presumed that the instruction was followed. Any effect the drugs and gun evidence had on the jury's decision to convict petitioner on the other charges was harmless rather than substantial. Resp. Ex. B at 45; see Davis v. Ayala, 135 S. Ct. 2187, 2197–98 (U.S. 2015) (stating that under the "actual prejudice" standard, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict'") (quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995)). Because petitioner suffered no prejudice, he is not entitled to relief on Grounds Three and Four.

### D. Ground Five: Jury Instruction for Resisting Arrest

Finally, petitioner argues that post-conviction counsel was inadequate in failing to raise an ineffective assistance claim based on trial counsel's failure to object to the jury instruction for resisting arrest. Petitioner contends that the jury instruction constructively amended the indictment and the jury thus convicted him of an uncharged offense. Respondent asserts that the exact nature of the underlying offense is not essential to the charge of resisting arrest by dangerous driving under Missouri law, and any objection to the instruction would not have altered the result of the trial.

The indictment charged petitioner with resisting arrest by fleeing as officers attempted to arrest him for the offenses of resisting a lawful stop, assault in the second degree, and reckless driving. Resp. Ex. B at 17. The indictment also separately charged petitioner for leaving the scene of a motor vehicle accident and assault in the second degree. Id. At trial, the jury was instructed that if they found that Officer Daly was making an arrest of petitioner for leaving the scene of the accident and petitioner resisted by fleeing from the officer, then the jury should find petitioner guilty of resisting arrest. Id. at 41.

Petitioner first contends that the difference between the charge in the indictment and the instruction given to the jury amounts to a constructive amendment rather than a variance. "The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." United States v. Stuckey, 220 F.3d 976, 981 (8th Cir. 2000). The charge in the indictment and the charge described in the jury instruction were for resisting an arrest for a felony by fleeing, with only the

18

underlying felony cited as evidence to support the charge being different.  Thus, the difference between the indictment and the instruction constitutes a variance rather than a constructive amendment.  Mo. Rev. Stat. § 575.150.

Under Missouri law, for a variance to be fatal, "[a]s a general rule, 'it is necessary to determine whether the variance between the information and the instruction was material and whether the variance prejudiced the substantial rights of the defendant . . . .'"  State v. Condict, 65 S.W.3d 6, 16 (Mo. Ct. App. 2001) (quoting State v. Lee, 842 S.W.2d 648, 651 (Mo. banc 1992)).  "A variance is material when it affects whether an accused received adequate notice from the information.  A variance is prejudicial when it affects the defendant's ability to adequately defend against the charges presented in the information and given to the jury in the instruction."  State v. McCullum, 63 S.W.3d 242, 252 (Mo. Ct. App. 2001).

Because the prosecution had charged petitioner with assault in the second degree and leaving the scene of a motor vehicle accident, in addition to resisting arrest by fleeing, the variance between the indictment and instruction was not material.  Petitioner received adequate notice from the indictment of all of the charges referred to in the jury instruction.  Also, under Missouri law, the prosecution is entitled to amend a charge any time before verdict if no additional or different offense is charged and the defendant's substantial rights are not prejudiced.  Mo. Sup. Ct. R. 23.08.  The jury instruction altered the underlying charge for which the prosecution asserted petitioner was being arrested when he resisted arrest—for resisting a lawful stop, assault in the second degree and reckless driving to leaving the scene of the accident—but this alteration did not add

19

a different charge or substantially prejudice petitioner's rights. The indictment separately charged petitioner with leaving the scene of an accident and assault in the second degree, both of which the jury independently found petitioner guilty. If trial counsel had objected to the instruction for resisting arrest, the prosecution could have amended the charge to conform to the instruction. Thus, petitioner also has not shown his entitlement to relief for this claim under either prong of Strickland. 466 U.S. at 687 (requiring a petitioner to show his counsel's performance fell below an objective standard of reasonableness by which he was prejudiced to prevail on an ineffective assistance of counsel claim).

## V. Conclusion

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

A judgment in accordance with this Memorandum will be entered separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of December, 2015.